IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KAREN D., *et al.*, ) | | |
| ) | | |
| Plaintiff, ) | No. | 24-cv-12282 |
| ) | | |
| v. ) | Judge: | Jeffrey I. Cummings |
| ) | | |
| BOARD OF EDUCATION OF THE CITY ) | | |
| OF CHICAGO, *et al.* ) | | |
| ) | | |
| Defendants. ) | | |

**DEFENDANT OFFICERS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Defendants Heriberto Arzate ("Arzate"), Ezequiel Bahena ("Bahena"), Jack Hightower ("Hightower"), Jeanne Mendez ("Mendez"), Brian Gunnell ("Gunnell"), and Quantilda Peterson ("Peterson") (collectively, "defendant officers"), by and through one of their attorneys, Michael J. Dinard, Assistant Corporation Counsel, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, respectfully move this Court to Dismiss Counts 1 through 5, Count 11, and Count 13, of plaintiffs' complaint. In support of their motion, defendant officers state as follows:

**INTRODUCTION**

Plaintiffs filed an eighteen-count complaint alleging against the defendant officers (1) illegal seizure; (2) substantive due process; (3) equal protection; (4) failure to intervene; (5) federal conspiracy; (11) state law intentional infliction of emotional distress; and (13) state law conspiracy. *See generally* ECF Dkt. No. 60, plaintiffs' first amended complaint, ("Pls'. Compl."). Defendant officers move to dismiss Counts 1, 2, 3, 4, 5, 11, and 13.

**STATEMENT OF FACTS**

Plaintiffs' lawsuit arises out of an incident where plaintiff AAB boarded a school bus and was to be transported to Helping Hand School. (Pls'. Compl., ¶ 64). There was some sort of disturbance between plaintiff AAB and the bus company's personnel that resulted in the bus returning to plaintiff

1

AAB's home. (*Id.* at ¶¶ 66-74). Plaintiff AAB is a non-verbal, autistic 17-year-old individual who needed to be strapped into his bus seat during transport. (*Id.* at ¶¶ 1, 66-74). During the ride, plaintiff AAB unbuckled himself and exited his seat. (*Id.* at ¶ 66). While on the bus, plaintiff AAB was caused significant distress and was terrified by bus personnel. (*Id.* at ¶¶ 71-72). Again, out of his seat and in continued fear and distress, plaintiff AAB approached the front of the bus. (*Id.* at ¶ 74). While plaintiff AAB approached the front, Defendant Bragg was continually abusing him by pushing and shoving him. (*Id*). The Chicago police were called, resulting in defendant officers arriving on scene. (*Id.* at ¶¶ 75-76). When the defendant officers arrived on scene, plaintiff AAB was in a calm state. (*Id.* at ¶ 74).

The officer defendants arrived at plaintiff AAB's home where the bus was waiting. (*Id.* at ¶ 76). Plaintiffs allege that the officers were aware that plaintiff AAB was a non-verbal autistic child. (*Id*). Despite having been physically abused moments prior, plaintiff AAB was calmly standing near the front of the bus when the officers arrived. (*Id.* at ¶¶ 76-77). Plaintiff AAB did not have shoes on, and when the officers inquired, bus personnel said that plaintiff AAB likes to take his shoes off. (*Id.* at ¶¶ 78-79).[1] Plaintiff AAB then exited the bus without shoes on, despite the officers directing plaintiff AAB to calm down and stay on the bus, noting it was cold outside. (*Id.* at ¶ 80). The officer defendants tried to convince plaintiff AAB to get back on the bus, which resulted in plaintiff AAB falling to the ground. (*Id.* at ¶ 81). Plaintiff AAB then began shrieking and bellowing for minutes on end in a sound loud enough to be heard from far away. (*Id.* at ¶ 84). There are no allegations that the defendant officers knew what plaintiff AAB's typical behavior was compared to that which they observed on scene on December 19, 2022. Paramedics and an ambulance arrived, ultimately resulting in plaintiff AAB being taken to Insight Hospital. (*Id.* at ¶¶ 85, 89).

---

[1] Plaintiffs removed the following paragraph from the amended complaint: "Defendant Brown then falsely informed the Defendant Officers that Plaintiff AAB was being combative on the bus and was fighting with Defendant Bragg. Defendant Brown further falsely stated that Plaintiff AAB jumped off the bus and ran down the street barefooted." (Plaintiff's Complaint, Dkt. No. 1 at ¶ 73). It seems plaintiffs' theory now is that the officers should have known plaintiff AAB was not in danger because he calmly got off the bus.

## **STANDARD OF REVIEW**

A motion to dismiss pursuant to Federal Rule 12(b)(6) should be granted if the challenged pleading fails to state a claim upon which relief can be granted. *Corcoran v. Chicago Park District*, 875 F.2d 609, 611 (7th Cir. 1989). A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering a motion to dismiss, the court accepts as true all well-pled facts alleged by the plaintiff and all reasonable inferences to be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005). However, the court is not obligated to accept a complaint that simply raises the possibility of relief. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). Rather, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To survive a motion to dismiss under Rule 12(b)(6), a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." (See Fed. R. Civ. P. 8(a)(2)). A complaint satisfies this standard when its allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-556.

## **ARGUMENT**

Plaintiffs' complaint must be dismissed for multiple reasons. Initially, this Court should rely on the body-worn camera footage of Officer Hightower, one of the first responders. Count 1, the illegal seizure claim, must be dismissed because defendant officers had probable cause to perform a mental health seizure on plaintiff AAB. Count 2, alleging a violation of due process, must be dismissed because it is duplicative of Count 1. Plaintiffs' equal protection claim (Count 3) must be dismissed because their class-of-one argument fails. Plaintiffs' failure to intervene claim, Count 4, must be dismissed because no constitutional violation existed to prevent. Count 5, the federal conspiracy claim, must be dismissed because it is implausible and the defendant officers' motivations are irrelevant. Counts 11 and 13 must be dismissed pursuant to the Tort Immunity Act. Counts 1 through 5 must

also be dismissed because the defendant officers are entitled to qualified immunity. Finally, all allegations against the defendant officers must be dismissed because they are not plausible on their face, violating *Twombly/Iqbal*.

### I. The Court can Rely on the Footage from Body-Worn Cameras of Defendant Officers

When weighing a Rule 12(b)(6) motion, the court may take judicial notice of facts in the public record without the request to dismiss being converted into a motion for summary judgment. *See Adkins v. VIM Recycling, Inc.*, 644 F. 3d 483, 493 (7th Cir. 2011); see also *Miles v. McNamara*, 2014 WL 948884, at *1 (N.D. Ill. Mar. 11, 2014); *Ennenga v. Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012); *see also Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir.1994). Although a district court must take the plaintiff's well-pleaded facts as true at the motion to dismiss stage, when an exhibit, including a video exhibit, "incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Esco v. City of Chicago*, 107 F.4th 673, 679 (7th Cir. 2024). It is appropriately balanced for a district court judge to consider video evidence that contradicts or discredits a plaintiff's account of the facts – but to view the video in the light most favorable to plaintiff. *Id.* Finally, the law is clear that this Court may consider materials that are incorporated by reference when ruling on a motion to dismiss pursuant to Rule 12(b)(6) without needing to convert the motion to a motion for summary judgment. *Brownmark Films, LLC v. Comedy Partners,* 682 F.3d 687, 690 (7th Cir. 2012).

All of plaintiffs' claims against the defendant officers rely on a baseless conclusion. Plaintiffs conclude that based on what defendant officers observed, they should have known that plaintiff AAB was not having a mental health crisis, and therefore was not a danger to himself or others. (Pls'. Compl., ¶¶ 74-75). However, when one looks at Hightower's body-worn camera, it quickly becomes clear that the incident did not play out at all in the way plaintiffs allege.

Plaintiffs claim that plaintiff AAB calmly exited the bus. (Pls.' Compl. at ¶ 80). However, Exhibit A clearly shows plaintiff AAB grabbing Hightower and attempting to push past him. (Please See Officer Hightower's body worn camera footage, hereto attached as Exhibit A, at 10:19:24-10:19:35). Officer defendants attempted to keep plaintiff AAB on his bare feet, but he sat himself down in the middle of the street. (*Id.* at 10:19:31-10:19:43). This obvious footage directly contradicts the plaintiffs' claim that "Officer Defendants then physically and forcibly tried to get Plaintiff AAB back on the bus, resulting in Plaintiff AAB falling to the ground." (Pls.' Compl. at ¶ 81). At this point it does not matter what the bus personnel told or did not tell the defendant officers. It is apparent that plaintiff AAB was in crisis. Additionally, Hightower attempted to knock on plaintiff AAB's residence to see if anyone was home. (Ex. A at 10:21:02-10:22:15). One can hear plaintiff AAB's distressful utterances while Hightower was knocking on the door, now a significant distance from the street. (*Id.*)

It is also evident that plaintiffs relied upon and utilized portions of Hightower's BWC in their amended complaint. Plaintiffs state in their amended complaint that "[u]pon arriving at Plaintiffs' home, the Officer Defendants walked up to the front door of the bus and saw Plaintiff AAB calmly standing by Defendant Bragg near the front of the bus, while Defendant Brown was seated in the bus driver's seat." (Pls.' Compl. at ¶ 77). This passage is an exact description of what is depicted on Hightower's BWC. (Ex. A at 10:18:45-10:19:05). Paragraph 79 of the amended complaint also describes what is depicted in the video footage, namely that an officer asked defendant Bragg where plaintiff AAB's shoes were at. (*Id.* at 10:19:00-10:19:05; Pls.' Compl. at ¶ 79). Plaintiff also describes plaintiff AAB's "shrieking and bellowing" which could be heard from far away. (Pls.' Compl. at ¶ 84). This fact could not have been known to plaintiffs without reference to Officer Hightower's body worn camera footage – where plaintiff AAB's utterances are captured and recorded while Officer Hightower is away from the street at the front door of plaintiffs' residence. (Ex. A at 10:21:08-10:21:15).

The above facts explicitly contradict plaintiffs' allegation that defendant officers were without probable cause to believe plaintiff was having a crisis and was a danger to himself. The video also shows that officers attempted to contact plaintiff AAB's family. It is hard to contemplate any other reasonable option other than taking plaintiff AAB to the hospital to be evaluated. The bus personnel were not taking him to school, and defendant officers were not going to leave a barefoot, distressed, non-verbal, autistic minor in the middle of the street. Exhibit A should be utilized by this Court – and is sufficient for the dismissal of all counts against defendant officers.

## II. Count 1 of Plaintiffs' Complaint Fails as Defendant Officers had Probable Cause to Seize Plaintiff

The Fourth Amendment of the Constitution governs mental-health seizures. *Bruce v. Guernsey*, 777 F.3d 872, 875 (7th Cir. 2015) (citing *Fitzgerald v. Santoro*, 707 F.3d 725, 732 (7th Cir. 2013)). Like ordinary seizures, mental-health seizures comply with the Fourth Amendment if officers have probable cause, which exists "only if there are reasonable grounds for believing that the person seized is subject to seizure under the governing legal standard." *Guernsey*, 777 F.3d at 875 (quoting *Villanova v. Abrams*, 972 F.2d 792, 795 (7th Cir.1992)). A mental health seizure is lawful if there is probable cause to believe that the person seized is a danger to himself or others. *Guernsey*, 777 F.3d at 875-76. A police officer does not need to personally witness behavior giving rise to probable cause, even if there must be personal observation according to state statute. *Id.* at 876 (citing *Chathas v. Smith*, 884 F.2d 980, 987 (7th Cir.1989). Additionally, a single eye-witness's statement – without further investigation or narration of contrary evidence is sufficient probable cause. *Lee v. Harris*, 127 F.4th 666, 673 (7th Cir. 2025).

In this case, any reasonable officer would have believed plaintiff AAB needed mental health care. Defendant officers were under no obligation to investigate whether the bus personnel were being truthful. The information they operated on was that plaintiff AAB was in mental distress and that he was a disabled, non-verbal minor. Just as importantly, defendant officers did not know the

6

particularities of plaintiff AAB's diagnosis or special needs. Regardless of whether this Court considers the body-worn camera footage, the officers knew the bus had turned around to try and take plaintiff AAB home. The officers knew no one was home at plaintiff AAB's residence. The defendant officers knew that the bus personnel were unwilling to continue to supervise plaintiff AAB. Plaintiff AAB got off the bus in December, barefoot, and sat down in the middle of the street. (Pls.' Compl. at ¶ 78-81). The defendant officers, at that point, had probable cause to take custody of plaintiff AAB to ensure his safety. It would have been a dereliction of duty for the officers to have left plaintiff AAB on the street, unsupervised. For these reasons, count 1 must be dismissed.

### III. Plaintiffs' Fourteenth Amendment Due Process Claim (Count 2) is Duplicative of their Fourth Amendment Claim and Must be Dismissed

A substantive due process claim regarding an alleged illegal seizure defers to the Fourth Amendment and is duplicative of a Section 1983 illegal seizure claim. *A.G. v. City of Park Ridge*, 198 F.Supp.3d 856, 864 (N.D. Ill. July 27, 2016); *see also Doe v. Heck*, 327 F.3d 492, 518 n. 23 (7th Cir. 2003) (substantive due process may not be called upon when a specific constitutional provision protects the right allegedly infringed upon). The alleged injury at issue here – that defendant officers violated plaintiff AAB's constitutional rights by seizing him illegally – is adequately covered by plaintiffs' Fourth Amendment seizure claim. The due process claim does not allege any further conduct or injury to distinguish it from the Fourth Amendment claim. To allow this claim to proceed would be to allow plaintiffs to pursue a second bite at the apple for the exact same constitutional harm. For this reason, plaintiffs' substantive due process claim is duplicative of their Fourth Amendment claim and must be dismissed.

### IV. Count 3 of Plaintiffs' Complaint must be Dismissed because the Class-of-One Theory Fails

Plaintiffs allege a class-of-one equal protection claim in count 3 of their complaint. (Pls.' Compl. at ¶ 155). To make out a class-of-one claim, a plaintiff must "establish that there exist

7

comparators with whom [he is] similarly situated." *Bloom v. Palos Heights Police Dep't*, 840 F. Supp. 2d 1059, 1067 (N.D. Ill. 2012) ( (quoting *Srail v. Vill. of Lisle*, 588 F.3d 940, 944 (7th Cir.2009)). The *Bloom v. Palos Heights* court felt it important to stress the following from *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 603 (2008):

> "There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise." 840 F. Supp. 2d at 1067.

In this matter, plaintiffs failed to provide any example of an individual similarly situated to plaintiff AAB. Claiming that "on information and belief, [defendant officers] did not unlawfully and forcibly seize and detain non-disabled students who calmly exited a bus where the non-disabled students had the ability to verbally inform others of the conduct" – does not do the job. *Bloom v. Palos Heights*, 840 F. Supp. 2d at 1067, (Pls.' Compl. at ¶ 123). Plaintiffs have not pleaded enough information to establish an equal protection claim, and therefore count 3 must be dismissed.

### V. Count 4 of Plaintiffs' Complaint must be Dismissed because the Defendant Officers did not Fail to Intervene and No Constitutional Violation Existed

Plaintiffs claim that the defendant officers failed to intervene to prevent a constitutional harm against plaintiff AAB. (Pls.' Compl. at ¶ 165). However, in the same pleading, plaintiffs complain that defendant officers did intervene by removing plaintiff AAB from the situation. (*Id.* generally). To succeed on this claim, plaintiffs must demonstrate that the defendant officers (1) knew that a constitutional violation was committed; and (2) had a realistic opportunity to prevent it. *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017). As argued above, defendant officers had probable cause to detain plaintiff AAB and take him to the hospital to address his mental health crisis. There was no constitutional violation to prevent in the first place.

8

If the bus personnel were in fact abusing plaintiff AAB as alleged, the defendant officers were protecting him from harm, and directly intervening to prevent further harm. The contradictory nature of the allegation that defendant officers wronged plaintiff AAB by both removing him and not removing him from the harmful situation frankly makes no sense. In fact, police officers have been found to violate children's rights by not intervening – leaving minor children without supervision, in inclement weather, after arresting their guardian. See *White v. Rochford*, 592 F.2d 381, 384 (7th Cir. 1979) (holding officers found liable in 1983 action for leaving minor children at a scene in the rain after taking custody of their guardians). For this reason, defendant officers ask this Court to grant their motion to dismiss and dismiss Count 4.

### VI. Plaintiffs' Federal Conspiracy claim (Count 5) must be Dismissed because it is Implausible and the Motivations of Defendant Officers are Irrelevant

Plaintiffs claim that defendant officers conspired with the other individuals on scene to deprive plaintiff AAB of his rights, to supposedly get away with it for its own sake. (Pls.' Compl. at ¶ 170). This count must be dismissed for two explicit reasons: first, the tangled web of its allegations is not plausible on its face; and second, that the officers' subjective motives are not relevant to the reasonableness analysis. The base requirement for a pleading is that it "state a claim to relief that is plausible on its face" *Twombly*, 550 U.S. at 570; *Iqbal*, 129 S.Ct. at 1949. the allegations in *Twombly* had asserted a conspiracy without adequate factual support and in a conclusory fashion. 550 U.S. at 567 (holding that parallel business practice claims in an antitrust context were implausible and thereby dismissed). Here, plaintiffs' claims of conspiracy are just as if not more implausible and conclusory than those in *Twombly*. When did the defendant officers explicitly agree to conspire with the bus personnel? Did it occur immediately upon arrival? Did the responding officers then communicate and conspire with one another to effectuate said conspiracy? There are no facts pleaded that hint at some agreement to conspire, as is required. For this reason, the federal conspiracy claim (count 5) must be dismissed.

9

Additionally, the constitutional reasonableness of a seizure does not "depend on the actual motivations of the individual officers involved" *Whren v. United States*, 517 U.S. 806, 812–13 (1996). What controls is the subjective standard of whether a reasonable officer could make the seizure under the same circumstances. *Id.* See also *Bloom v. Palos Heights*, 840 F. Supp. 2d at 1069–70. In this case, defendant officers acted upon probable cause that plaintiff AAB was a danger to himself, needed some sort of supervision, and was having a mental health crisis. Any reasonable officer would have done the same. In fact, any reasonable officer would have been left without an alternative course of action, given the circumstances. For this additional reason, Count 5 must be dismissed.

### VII. Counts 11 and 13 of Plaintiffs' Complaint must be Dismissed under the Tort Immunity Act

Plaintiffs' state law claims of intentional infliction of emotional distress and conspiracy, must be dismissed as each claim was filed outside the statute of limitations period. "Federal Courts routinely measure the timeliness of federal civil rights suits by state law." *Hardin v. Straub*, 490 U.S. 536, 538, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989). Generally, in Illinois, the statute of limitations for torts involving personal injury is two years. 735 ILCS 5/12-202. However, under the Illinois Tort Immunity Act, 745 ILCS 10/8-101, "civil actions" commenced against local entities or employees of a local entity "must be commenced within one year from the date that the injury was received or the cause of action accrued." *Gholson v. Lewis*, No. 07C3694, 2008 WL 821875, at *3 (N.D. Ill. Mar. 26, 2008) (quoting 745 ILCS 10/8-101(a)); See also *O'Toole v. Chicago Zoological Soc'y*, 17 N.E.2d 869, 873, (1st Dist.2014).

Plaintiff's Complaint indicates that the alleged injury occurred on December 19, 2022. (Pls.' Compl.). Plaintiffs filed their Complaint on November 27, 2024. Given that this timeframe exceeds one year, Counts 11 and 13 are untimely and must be dismissed with prejudice. See *Pavlovsky v. VanNatta*, 431 F.3d 1063, 1064 (7th Cir. 2005) ("The dismissal of a suit as untimely is a dismissal on the merits, and so should ordinarily be made with prejudice, barring relitigation.").

Additionally, "[i]t is well-established under Illinois law, that 'allegations of willful and wanton conduct do not deprive a local public entity and its employees of the benefit of the shorter limitations period provided in [The Tort Immunity Act]'". *Cooperwood v. Farmer*, 315 F.R.D. 493, 500 (N.D. Ill. 2016) (quoting *Luciano v. Waubonsee Cmty. Coll.*, 245 Ill.App.3d 1077, 614 N.E.2d 904 (2d Dist.1993)). Therefore, plaintiffs' state law claims against the defendant officers must be dismissed with prejudice.

### VIII. Counts 1, 2, 3, 4 and 5 Must be Dismissed because Defendant Officers are Entitled to Qualified Immunity

Defendant officers are immune from liability for plaintiffs' section 1983 claims. "The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not clearly violate statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity serves to balance the competing interests of protecting public officials from harassment, liability, and distractions while at the same time needing to hold public officials accountable when they exercise their power unreasonably. *Id.* at 231.

Even if this Court were to find that defendant officers lacked probable cause to seize plaintiff AAB and take him to the hospital, the officers are nonetheless entitled to qualified immunity on the plaintiffs' section 1983 claims because the law was not clearly well established at the time of the incident such that every reasonable officer would know that the defendant officers' actions were improper.

The protection of qualified immunity applies regardless of whether the officer's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231; *Tebbens v. Mushol*, 692 F.3d 807, 820 (7th Cir. 2012) ("Qualified Immunity protects officers who are 'reasonable, even if mistaken' in making probable cause assessments."). In terms of qualified immunity, an officer needs only "arguable" probable cause. *Huff v. Reichert*, 744 F.3d 999, 1007 (7th Cir. 2014). Arguable probable cause exists when a reasonable officer in the same circumstances and

11

with the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law. *Id.*; *Tebbens*, 692 F.3d at 821 ("The qualified immunity defense … provides ample protection to all but the plainly incompetent or those who knowingly violate the law.").

Based on the arguments above and in the previous sections of this motion, defendant officers did not clearly violate plaintiff AAB's constitutional rights. In fact, they were trying to help the young man. Regardless, their conduct comes nowhere close to that of a "plainly incompetent" officer. Counts 1 through 5 must be dismissed for these reasons.

    **IX.**    **Plaintiffs' Complaint in its Entirety Fails against Defendant Officers as it relies on an Implausible Claim**

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) held that to survive a Rule 12(b)(6) motion a complaint must provide "only enough facts to state a claim to relief that is plausible on its face." Or put otherwise, "[f]actual allegations must be enough to raise a right of relief above the speculative level." Plaintiffs' complaint relies entirely on the notion that defendant officers should not have believed that plaintiff AAB was having a mental health crisis, because, despite being barefoot, he **calmly** exited the bus. (Pls'. Compl. at ¶ 80). First, this is a blatant mischaracterization of what actually happened. But nonetheless, based on their observations, defendant officers should have known that plaintiff AAB was not being combative and did not run down the street in his bare feet. (*Id.*) Not only do plaintiffs' claim that the officers should have just ignored a barefoot, non-verbal autistic minor shrieking in the middle of the street, but also that they conspired with the bus personnel to deprive plaintiff AAB of his constitutional rights. It is worth noting that the allegations that the Supreme Court found wanting in *Twombly* had, in conclusory fashion, asserted a conspiracy without adequate factual support. 550 U.S. at 567.

In *Bloom v. Palos Heights Police Dep't*, officers received a call that a woman was contemplating suicide and had a knife to her throat. 840 F. Supp. 2d 1059 (N.D. Ill. 2012). Upon arrival, the woman told the officers that she did not have the intention to kill herself and that nothing was amiss. *Id.* at 1068. Plaintiffs in that case alleged that the police officers conspired with the woman's mother, in a conclusory fashion, to remove her from the house even though there was not a reasonable basis to do so. *Id.* at 1069. Not only did that court find the allegations against the officers implausible under *Twombly/Iqbal*, but also lauded the officers for taking the woman to the hospital, thereby deferring to medical professionals. *Id.* at 1068-1069.

This matter is frightfully similar to that in *Bloom v. Palos Heights*. Plaintiff is claiming that defendant officers should have ignored their instincts and believed that plaintiff was not in need of help because he calmly exited a bus, barefoot in the winter. Plaintiff AAB's calmness is analogous to the plaintiff in *Bloom* saying she had no intention of killing herself. Further, plaintiffs allege that defendant officers conspired with the bus personnel to deprive defendant AAB of his constitutional rights, by apparently deferring to medical professionals. Just as the court in *Bloom v. Palos Heights* held, it is an understatement to label this combination of allegations as wildly fanciful. *Id.* at 1069.

The allegations are also contradictory. In one moment, plaintiff AAB is significantly distressed and terrified. (Pls.' Compl. at ¶¶ 71-74). However, when the defendant officers arrived on scene, plaintiff AAB was in a calm state and calmly exited the bus. (*Id.* at ¶¶ 77-80). When it suits plaintiffs' suit against the defendant officers, plaintiff AAB is calm and docile. When it suits their suit against the other defendants, he is terrified and distressed. There is no question that plaintiff AAB was in distress and needed care that day. The other defendants may have caused this distress. However, plaintiffs cannot allege that plaintiff AAB suddenly switched his whole demeanor when defendant officers arrived, thereby eliminating from the pleading the inference that they would have observed the distress. This is convenient for plaintiffs, but also implausible.

Finally, the allegations in the complaint become even more improbable if viewed in light of the body-worn camera footage. Plaintiff AAB is seen barefoot on the bus, in December. (Ex. A at 10:18:51-10:19:27). Plaintiff AAB appears to be in distress, taking himself to the ground in the middle of the street, barefoot, as defendant officers attempt to calm him down and help him. (Ex. A at 10:19:24-10:19:43). Plaintiff AAB's distressed utterances can be heard through the majority of Exhibit A. Plaintiffs have essentially pleaded that they would rather defendant officers have left plaintiff AAB on the street, forced him back into the bus, or arrested him, rather than defer to medical professionals and take him to the hospital. See *Bloom v. Palos Heights*, 840 F. Supp. at 1068 (stating that officers acted reasonably under those circumstances by turning to professionals rather than forming their own lay opinions about someone's mental health). The complaint against defendant officers runs afoul of the well-established standards in *Twombly/Iqbal*, and must be dismissed in its entirety.

## CONCLUSION

Defendant officers did everything in their power to aid plaintiff AAB on the morning of December 19, 2022. Upon arrival at the scene, the officers observed plaintiff AAB in crisis. They did not know the particularities of plaintiff AAB's needs – but did know that he needed help. Based on the totality of circumstances at the scene, the only reasonable choice was to take plaintiff AAB to the hospital for evaluation. This only becomes more apparent if one views Officer Hightower's body-worn camera footage. If the allegations against the bus personnel are true, the officers saved plaintiff AAB from a dangerous and abusive situation. The defendant officers protected plaintiff AAB and cared for him as any reasonable officer would and should.

**WHEREFORE**, for the forgoing reasons, defendant officers respectfully request that this Honorable Court grant their Motion to Dismiss Plaintiffs' Complaint and for any other relief deemed just by this Honorable Court.

Date: June 13, 2025                                                  Respectfully submitted,

                                                             /s/ Michael J. Dinard
                                                             Michael J. Dinard
                                                             Assistant Corporation Counsel

David Condron, Assistant Corporation Counsel Supervisor
Michael J. Dinard, Assistant Corporation Counsel
City of Chicago Department of Law
Federal Civil Rights Litigation Division
2 N. LaSalle Street, Suite 420
Chicago, Illinois 60602
(312) 744-1975
michael.dinard@cityofchicago.org
Attorney No. 6319027
*Attorney for defendant officers*

## CERTIFICATE OF SERVICE

      I certify that on June 13, 2025, I electronically filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                                                             /s/ Michael J. Dinard
                                                             Michael J. Dinard
                                                             Assistant Corporation Counsel